FILED
 2010 Mar-29  PM 03:34
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DONALD RUSSELL,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-09-S-715-E** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**JUDGMENT**

Claimant Donald Russell commenced this action on April 14, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner affirming the decision of the Administrative Law Judge denying his claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case is due to be remanded to the Commissioner for an award of benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant argues that the Commissioner's decision was neither supported by substantial evidence nor in accordance with legal standards. Specifically, claimant asserts that the ALJ erred in finding that he did not meet the requirements of Listing 12.05, governing mental retardation, as well as in failing to fully credit the opinion of Dr. Robert A. Storjohann, the consultative examiner. Upon consideration, the court finds that claimant's contentions are correct, and that this case is due to be remanded to the Commissioner for an award of benefits.

Claimant alleges he is disabled pursuant to Listings 12.05B and 12.05C, which provide:

> *Mental Retardation.* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> B.   A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR

>       C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[. . . .]

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.05 (listings) (all italics in original).

The ALJ found the following with regard to claimant's satisfaction of those two Listings:

> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. There is no longitudinal history of mental impairment which would support this degree of limitation.
>
> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Again, the claimant has demonstrated adaptive functioning skills and the great weight of the evidence of record does not support a showing that the claimant's I.Q. is less than borderline in nature, which would allow him to perform simple, non-complex work, as he has done successfully for many years in the past.[1]

This court finds the ALJ's explanation of his decision to be insufficient. The ALJ did not discuss any medical evidence in the record that might weigh against a finding of disability. To the contrary, the only evidence in the record regarding claimant's mental abilities actually supports a finding of disability. Dr. Robert A. Storjohann, Ph.D., performed a psychological examination on claimant on January

---

[1] Tr. at 16-17.

3

23, 2008. Dr. Storjohann stated that claimant's "level of intellectual functioning is estimated to fall in the low borderline to mild range of mental retardation."[2] Dr. Storjohann also conducted psychometric testing on February 7, 2008. The testing revealed that claimant had a Verbal Scale IQ of 62, a Performance Scale IQ of 56, and a Full Scale IQ of 56. Dr. Storjohann stated that those IQ scores "indicate that [claimant] is functioning in the mild range of mental retardation and that he is functionally illiterate."[3]

The ALJ assigned only little weight to Dr. Storjohann's assessment, and therefore concluded that claimant had never been assigned a "valid" IQ score of 59 or less. The only explanations the ALJ offered for that decision, however, were a summary statement that the opinion was "not supported by the evidence of record," that claimant has performed gainful work activity since becoming an adult, and that there was no evidence that claimant needs constant care or attention."[4] The Commissioner asserts that those explanations are sufficient, relying upon the Eleventh Circuit's decision in *Popp v. Heckler,* 779 F.2d 1497 (11th Cir. 1986). There, the Eleventh Circuit held that, even though the results of an IQ test would have placed Popp at the mental retardation level according to Listing 12.05C, "it was

---

[2]Tr. at 266.
[3]Tr. at 272.
[4]Tr. at 18.

4

proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact mentally retarded." *Id.* at 1499. According to the Eleventh Circuit, IQ test results "must be examined to assure consistency with daily activities and behavior." *Id.* The Court found that Popp's IQ test results could be discredited because substantial evidence indicated that the results were "inconsistent with other evidence and because there was good reason to believe that Popp exaggerated his problems." *Id.* at 1500. Specifically, the evidence revealed that Popp had obtained an associate's degree and was near completion of a bachelor's degree, that Popp had performed technical jobs like teaching algebra and working as a statistical clerk, that the testing psychologist believed the test results were invalid because Popp tended to place himself in an unfavorable light, that Popp was able to umpire softball games, and that another medical source indicated that Popp was exaggerating his symptoms. *Id.* at 1499-1500.

     This court is not persuaded by the Commissioner's argument, because the *Popp* decision is distinguishable. As an initial matter, *Popp* addressed a claim under Listing 12.05C, which explicitly contemplates that other limitations should be considered in conjunction with a claimant's IQ scores when evaluating mental retardation. The decision has less relevance to an analysis under Listing 12.05B, which requires *only* proof of an IQ score lower than 59. Furthermore, the "other

5

evidence" considered in *Popp* was much more probative than the "other evidence" in this case. Popp successfully completed college courses, taught algebra, and performed other technical jobs. Additionally, there was evidence from medical sources that Popp had exaggerated his symptoms or was otherwise not fully credible. The claimant in this case, in contrast, had a work history consisting solely of manual labor, including as a poultry worker, construction worker, veterinary assistant, and car washer. Further, there is little, if any, indication that claimant is less than credible or has exaggerated symptoms. In fact, Dr. Storjohann stated that claimant "put forth good effort" during the IQ testing, and that the test results "represent an accurate appraisal of his current abilities."[5] These facts distinguish the *Popp* decision. Consequently, the ALJ should not have relied on *Popp* to reject the validity of claimant's IQ scores. *Cf. Cobb v. Barnhart,* 296 F. Supp. 2d 1295 (N.D. Ala. 2003) (distinguishing *Popp* because the claimant had performed only manual labor in the past and had no daily activities that were inconsistent with a finding of mental retardation); *Williams v. Astrue,* — F. Supp. 2d —, 2010 WL 565603, at *9 (N.D. Fla. Feb. 16, 2010) (distinguishing *Popp* when the claimant had "worked at jobs that did not require more than minimal intelligence, and she was not shown to have engaged in any activity beyond what would be expected of a person who is mildly mentally

---

[5]Tr. at 271.

retarded").

Based on the foregoing, this court concludes that the ALJ did not articulate a sufficient basis for rejecting Dr. Storjohann's assessment and claimant's IQ scores. The ALJ's decision consequently was neither in accordance with applicable law nor supported by substantial evidence. The substantial evidence of record reveals that claimant has valid Performance and Full Scale IQ scores below 59. Those scores are sufficient to satisfy Listing 12.05B.[6] Accordingly, the decision of the Commissioner is REVERSED. Pursuant to Sentence Four of 42 U.S.C. § 405(g), this action is REMANDED to the Commissioner of the Social Security Administration, with instructions to award benefits to claimant.[7]

The clerk is directed to close this file.

DONE this 29th day of March, 2010.

_____
United States District Judge

---

[6] Because claimant satisfies the requirements of Listing 12.05B, there is no need to evaluate whether he also satisfies the requirements of Listing 12.05C.

[7] 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."